## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHARLES ROMEO, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 13-2133 |
| v. | : | |
| | : | |
| Harrah's Atlantic City Propco, LLC | : | |
| | : | **AMENDED OPINION[1]** |
| Defendants. | : | |
| | : | |

     This matter comes before the Court on Motion of Defendant Harrah's Atlantic City Propco, LLC ("Harrah's") for Summary Judgment pursuant to Fed. R. Civ. P. 56. Principally, Harrah's claims that it is not liable for Plaintiff Charles Romeo's slip and fall accident at its casino because Plaintiff cannot make a prima facie case of negligence.  Harrah's argues that it did not owe a duty of care to Romeo because it lacked both actual and constructive notice of the dangerous condition that Plaintiff alleges caused his fall.

    The Court has considered the written submission of the parties and heard argument on the motion during a hearing on September 22, 2015.

---

[1] This Opinion and accompanying Order amend the Court's January 26, 2016 Opinion [Dkt. No. 32] and Order [Dkt. No. 33] to reflect the accurate name of the Defendant as Harrah's Atlantic City Propco, LLC, per the stipulation of the parties on January 20, 2015 [Dkt. No. 20].

On September 30, 2015, the Court ordered the parties to brief the impact of the New Jersey Supreme Court's decision in <u>Prioleau v. Kentucky Fried Chicken, Inc.</u> 223 N.J 245, 122 A.3d 328 (2015) on the matter at hand.  The Court has considered the supplemental submissions.

For the reasons expressed on the record on September 22, 2015 and those that follow, Defendant's motion for summary judgment is denied.

## I.   <u>Background</u>

Romeo claims that he slipped and fell at Defendant's Atlantic City casino on March 19, 2011.  Video surveillance shows that a patron of the casino spilled a liquid beverage on a common walkway at approximately 7:03 p.m. <u>See</u> Def. Ex. A, Surveillance Video.  Approximately four minutes later, the same video depicts Romeo slipping on the spilt liquid, appearing to cause his fall. <u>Id.</u>   There is no dispute as to the contents of the video. Plaintiff alleges the liquid on the floor of the common area caused his fall and subsequent injuries.

Harrah's in house cleaning department is called EVS.  EVS is responsible for cleaning the public areas of the casino and has its employees stationed throughout the casino.  An EVS supervisor testified that the area in which Romeo fell is inspected every thirty (30) to forty (40)

minutes.  Given the time in between inspections by EVS and the short window of time in between the spill and Romeo's fall, Harrah's claims that it did not have constructive notice of the dangerous condition.

Plaintiff claims that Defendant's mode of operation created the dangerous condition and thereby relieves Plaintiff of proving actual or constructive notice.  Under this theory, Harrah's drink services are an integral part of the casinos' mode of operation.  Specifically, there are several vending machines near the common walk way and patrons are provided with free drinks and bottles of water.  Harrah's employs over 145 cocktail servers to accommodate its guests beverage needs in an effort to keep the guest on the gambling floor. Holt Dep., Ex. B, 14:7-22; Exs. C, D, E.  To accomplish this, the cocktail servers walk around the casino, including the common area.  Patrons may also carry around free bottles of water, with the Harrah's logo on the bottle, and drinks, purchased and/or complimentary, on the concourse and throughout the casino.  Id., Ex. F.

To the extent the mode of operation theory does not apply to Harrah's, Plaintiff disputes Harrah's notice claim, arguing that in addition to EVS, the casino has camera surveillance everywhere.  The camera that captured the spill and subsequent fall appears to zero in on an individual at

the 5:22 mark, which Plaintiff claims suggests human manipulation and therefore imputes notice upon the casino.

## II.   **Summary Judgment Standard**

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265  (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must

view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   Analysis

"In negligence cases under New Jersey law, a plaintiff must establish that defendant breached a duty of reasonable care, which constituted a proximate cause of plaintiff's injuries." Keith v. Truck Stops Corp. of Am., 909 F.2d 743, 745 (3d Cir. 1990). "It is well recognized that the common law imposes a duty of care on business owners to maintain a safe premises for their business invitees because the law recognizes that an owner is in the best position to prevent harm." Stelluti v. Casapenn Enterprises, LLC, 203 N.J. 286, 1 A.3d 678, 691 (N.J. 2010). "Ordinarily an injured plaintiff asserting a breach of that duty must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 818 A.2d 314, 316 (N.J. 2003). However, under New Jersey law, a plaintiff need not prove that element where "as a matter of probability, a dangerous condition is

likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents." Id. In such circumstances, a plaintiff is afforded "an inference of negligence, imposing on the defendant the obligation to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the potential hazard." Id. This is referred to as the "mode-of-operation rule." See id. (finding that when the very nature of a business's operation creates the hazard, the "mode-of-operation rule" creates an inference of negligence and "shifts the burden to the defendant to 'negate the inference by submitting evidence of due care' " (quoting Bozza v. Vornado, Inc., 42 N.J. 355, 200 A.2d 777, 780 (N.J. 1964)); Wollerman v. Grand Union Stores, Inc., 47 N.J. 426, 221 A.2d 513, 514–15 (N.J. 1966) (the rule requires the defendant to show it did "all that a reasonably prudent [person] would do in light of the risk of injury [the mode of operation] entailed"). A defendant may then avoid liability if it shows that it did "all that a reasonably prudent man would do in the light of the risk of injury [the] operation entailed." Nisivoccia, 175 N.J. 559, 818 A.2d at 317 (citation omitted). "The ultimate burden of persuasion remains, of course, with the plaintiff." Id.

In Prioleau the New Jersey Supreme Court reestablished the narrow application of the mode of operation rule, limiting its

application to the setting of a "self service" business. <u>Prioleau</u>, 233

N.J. 245, 122 A.3d 328. Prioleau was a patron at a fast food restaurant

who fell on a liquid substance as she walked from the counter toward

the restroom.  The trial court instructed the jury to consider the

"mode of operation" rule.  The New Jersey Supreme Court reversed,

holding that the "mode of operation" jury instruction was

inappropriately applied because there was no evidence that the

location of plaintiff's fall had any nexus to the self-service beverage

component of the defendants' business. <u>Id.</u>

The Court set forth four principles governing application of the mode of

operation rule:

> (1) First, the mode-of-operation doctrine has never been
> expanded beyond the self-service setting, in which customers
> independently handle merchandise without the assistance of
> employees or may come into direct contact with product
> displays, shelving, packaging, and other aspects of the facility
> that may present a risk. The distinction drawn by these cases is
> sensible and practical. When a business permits its customers
> to handle products and equipment, unsupervised by employees,
> it increases the risk that a dangerous condition will go
> undetected and that patrons will be injured. Thus, the mode-of-
> operation rule is not a general rule of premises liability, but a
> special application of foreseeability principles in recognition of
> the extraordinary risks that arise when a defendant chooses a
> customer self-service business model.
>
> (2) Second, the rule applies only to accidents occurring in areas
> affected by the business's self-service operations, which may

extend beyond the produce aisle of supermarkets and other facilities traditionally associated with self-service activities.

(3) Third, the mode-of-operation rule is not limited to cases in which customer negligence created the dangerous condition; it also applies to self-service settings in which the injury may have resulted from the manner in which employees handled the business's products or equipment, or the inherent qualities of the merchandise itself. Accordingly, the mode-of-operation charge may be given even in the absence of evidence that the carelessness of the plaintiff, or another patron, gave rise to the dangerous condition.

(4) Fourth, if the mode-of-operation rule applies, it affects the parties' burdens of proof in two respects. The rule relieves the plaintiff of the burden of proving actual or constructive notice of the dangerous condition. It also gives rise to an inference of negligence, shifting the burden of production to the defendant, who may avoid liability if it shows that it did all that a reasonably prudent man would do in the light of the risk of injury the operation entailed. Thus, if the rule applies in a particular case, it substantially alters the ordinary allocation of the burdens between the parties.

Prioleau, 122 A.3d at 338–39 (citations omitted).

Defendant does not contest that casino guests are permitted to carry open beverages throughout the casino floor, including the concourse area where Romeo fell. In addition, Defendant supplies some patrons with free or complimentary beverages, at various places surrounding the concourse area. Defendant argues that because Romeo's slip and fall did not occur in an area of a "self service" station, there is no basis to expand the mode of operation rule to the concourse area.

Here, the manager of Food and Beverage Services Antione Holt's testimony, in conjunction with the photographs of the cocktail servers, the admissions of drink service at gaming tables, drink ordering at the slot machines and the free bottled water all suggest that the mode of operation at Harrah's includes patrons drinking in the concourse area where Plaintiff fell. The video surveillance footage that captured Romeo's slip and fall depicts a steady stream of patrons traversing the concourse, many holding what appear to be open beverage containers, bottled water, coffee cups, and beer bottles.  Defendant does not dispute this fact.  Instead, Defendant argues that a casino is not a self-serve business as contemplated by the rule.

The Court need not determine whether a casino is a self-serve business as contemplated by the rule because, even if it was, Plaintiff cannot demonstrate the required nexus between the spill and Defendants' alleged self-service operation.  There is no proof in the record that the spilt liquid in this case came from Defendant's beverage service.  Although there is no dispute that Defendant supplies beverages in self-service style to casino patrons, including bottled water, the nexus between that service and Plaintiff's accident is tenuous; we do not know the identity of the person who spilled his beverage and therefore cannot determine whether or not he got the beverage from Defendant. Compare Katsaros v. Target Corp., No.

12-CV-7708, 2015 WL 456950 (D.N.J. Feb. 3, 2015) (where a spilled

beverage was purchased at Target self-service station).

Under the dictates of <u>Prioleau</u>, the mode of operation rule does not

apply.  The New Jersey Supreme Court considered the very situation

present here- whether a spill of unknown origin is enough to establish

application of the mode of operation rule in a self-service setting.

> Moreover, neither of plaintiff's theories of liability involves a
> self-service operation that might warrant a mode-of-operation
> jury instruction. The theory offered by plaintiff to justify the
> mode-of-operation charge, that oil and grease are used in
> cooking at the restaurant and that managers regularly examined
> the floor, establishes no nexus to customer self-service or related
> business operations. If the accident occurred because restaurant
> employees tracked oil and grease from the kitchen to the
> restroom area, it resulted from the preparation of food in a
> kitchen area off limits to patrons, a component of the business in
> which customers played no part. While that evidence might
> support a finding that a plaintiff need not show actual or
> constructive notice because the condition was created by
> defendant or its employees, <u>see, e.g.</u>, <u>Smith</u>, supra, 94 N.J.Super.
> at 464–66, 228 A.2d 874 (holding that slip and fall on greasy
> stairway caused by sawdust tracked onto steps by defendant's
> employees warranted charge), it does not implicate the mode-of-
> operation rule.
>
> Nor does plaintiff's alternative theory of negligence that
> patrons tracked water from the outdoors into the restaurant on a
> rainy evening bear any relationship to self-service activities. The
> potential for customers to track water into a building during
> inclement weather is not contingent on a defendant's business
> model; that risk exists in virtually any facility that admits patrons
> from public sidewalks or parking areas into its facility. Thus,
> plaintiff's second theory of negligence does not support the jury
> charge given by the trial court.

<u>Prioleau</u>, 122 A.3d at 339.

However, summary judgment is denied because a jury question exists as to whether Defendant had constructive notice of the spill.

Defendant agrees that it owed a duty to Plaintiff to maintain the premises in a reasonably safe condition.  A breach of that duty occurs where "the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." <u>Nisivocci</u>, 175 N.J. at 563. "Constructive knowledge refers to notice that a particular condition existed for such a length of time as reasonably to have resulted in knowledge of the condition, had the owner ... been reasonably diligent." <u>Kempf v. Target Corp.</u>, No. 06–1935, 2008 WL 305457, at *2 (D.N.J. Jan. 31, 2008) (citing <u>Parmenter v. Jarvis Drug Store</u>, 48 N.J. Super. 507, 510 (App. Div. 1957)). In other words, an owner breaches his duty where he either has notice of a dangerous condition or if the condition existed for such a length of time that the owner should have known of the condition and fails to remediate the problem. <u>Id.</u>

Generally, the determination of whether a breach has occurred is a jury question.  <u>See</u> <u>Filipowicz v. Dilletto</u>, 350 N.J. Super. 552, 561 (App. Div. 2002). "It is the function of the jury to determine the condition of the property and the reasonableness of defendant's care." <u>Id.</u>   There is no evidence in the record that indicates that Defendants had actual notice of the

spill. Plaintiff's suggestion that alleged human manipulation of the camera at the five minute mark of the video is too remote in time from the duration of the spill in the post twenty six minute time frame to establish actual notice. However, a jury could reasonably find that Defendant had constructive notice of the spill.

Defendant's corporate designee Patti Geraci testified that the video depicts casino supervisor Fernando DaSilva walking in the general area of the existing spill, lingering for a moment, and then departing the area. See Ex. H., Geraci Dep. 11:16-22. In addition, Ms. Geraci states that every employee is tasked with identifying hazards. Id. at 19-20.    Drawing all favorable inferences in Plaintiff's favor, a genuine issue of material fact exists as to whether Defendant had constructive notice of the spill, despite the fact that it existed for only four minutes prior to Romeo's fall. See Matsushita Elec. Indus. Co., 475 U.S. at 587; Kempf, 2008 WL 305457 at *2.    Standing alone, the amount of time is not enough to establish constructive notice. See, e.g., Bowman v. Wal-Mart Stores E., LP, No. 14-3182, 2015 WL 568570, at *5 (E.D. Pa. Feb. 10, 2015) ("The approximately four-minute period between the spill and Bowman's fall is a short duration from which to find constructive notice for a hazard not caused by Wal–Mart.")  However, when coupled with the video surveillance of the area and the fact that Mr. DaSilva

was in the area during the existence of the spill, the Court concludes that a genuine issue of material facts exists as to whether or not Defendant had constructive notice of the spill.

Defendant's motion for summary judgment is denied.

## IV.   **Conclusion**

For the reasons set forth above, Defendant's motion for summary judgment is denied.  An appropriate Order shall issue.

Dated: March 10, 2016

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE